22-1426. Good afternoon, your honors. May it please the court. My name is Diana Fobby Sampson, and I represent Ghislaine Maxwell. Your honors, 2007, the government negotiated an agreement with a criminal defendant, and the defendant fulfilled all the conditions to the enforcement of the agreement, including a state guilty plea. The Supreme Court has held that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be the part of the inducement or consideration, such promise must be fulfilled. That promise was fulfilled for many years, until 2018, when certain articles in the Miami Herald brought renewed interest to the case. The result of that was that the Justice Department looked into the matter, and the Southern District of New York decided to take another shot. In the end, Ms. Maxwell was prosecuted for crimes that she, as a third-party beneficiary to the plea agreement in Florida, should not have been prosecuted for. So you are relying on one provision of the non-prosecution agreement that refers to any potential co-conspirators of Epstein, and that names four people, presumably co-conspirators, but does not refer to Ms. Maxwell. Is that correct? I am relying on that provision, but I am reading it in the context of the entire agreement that casts clarity on the scope of the immunity, both in terms of what is covered and where the immunity lies. And that would include the Southern District of New York. Was there any evidence at any point about why your client was not listed among the four who were named specifically in that clause? Well, Your Honor, there was no hearing before... That's why I ask, at any point, any moment... No, there was not, because this was a non-prosecution agreement, and Ms. Maxwell doesn't have that much discovery regarding this, although there was some indication in the discovery that she did receive, and certainly in the Justice Department's report, that they did speak with two of the complaining witnesses who testified in the trial in New York for this case. So they certainly had interviews where her name was mentioned, at least with regard to Annie Farmer, one of the testifying witnesses. I mean, there are two separate issues, right? Whether she's a beneficiary and whether, in any event, the agreement is binding only on the Southern District of Florida or also binding on the Southern District of New York. That's true, Your Honor. In fact, there are three. But I would say, regarding the issue of whether she's covered by this, the who of this, while this is de novo review, I realize, the District Court did have no trouble finding that Ms. Maxwell was within the category of persons sought to be covered by this agreement, as she is clearly a potential co-conspirator of Epstein, as evidenced by this case, and also found that as a third-party beneficiary to the agreement, she had standing to enforce the agreement to the extent the agreement gave her immunity. And you agree that that is subject to de novo review by us? Yes, Your Honor. And so the next issue, then, is whether the scope of the immunity precluded the Southern District of New York from bringing prosecution in this case. And the government elects to cite the United States, for the proposition that a plea agreement binds only the office of the United States Attorney. When you say elects to cite, that seems to be the elephant in the room. Yes. So that's necessarily part of the discussion. Yes. So distinguish an obby for me, other than the fact that that involves, I guess, a plea agreement as opposed to a non-prosecution. Well, this non-prosecution agreement is also a plea agreement. It's also distinguishable on the facts, because an obby involved an oral agreement in the Eastern District that actually was a plea. And the only thing that was said was the government is moving to dismiss counts two and three, and the defendant is pleading guilty to count one. So there was no contemplation of immunity beyond what is inherently involved in a plea, and that's why an obby is mostly about double jeopardy. But our position is that an obby does not apply here. There are reasons it doesn't, but even if we apply an obby by its own rule, the plea agreement applies to preclude this prosecution. And the reason is because there are many affirmative appearances of intent to bind other districts, and those appearances begin with the agreement itself. It's not simply, as the government would have it, that the language of the clause that protects Ms. Maxwell uses the noun United States. It is also reading that clause in conjunction with the immunity clause that refers to Epstein, that the clause that refers to Epstein uses the language in this district. So it's not just does the United States attorney in this sentence or that sentence call itself the government, the United States, the United States attorney. That's a bit of a red herring because the reality is all U.S. attorneys have actual authority to bind other districts. The question is intent to bind. And in this document, it's clear. You know, I read the DOJ manual on entering into non-prosecution agreements, and it suggests the opposite of what you just said. In other words, that the presumption is that a United States attorney cannot bind any other office except his or her own office. Your Honor. How does the DOJ manual play into this, if at all? Your Honor, I think the DOJ manual is evidence that U.S. attorneys have the actual authority to bind other districts. That's why the internal rules of the Justice Department are that U.S. attorneys ought to be careful about it. The Justice manual is not a law that can be used. That's why I used the word presumption. Yes. So the strong presumption, based on any reading of this provision of the DOJ manual, is that attorneys for the government contemplating such an agreement will not have the power to bind other offices. And so, as I understand it, you also have the burden to show that the Southern District of New York is bound by the NPA. So tell me how to read this non-prosecution agreement manual or how to think about it in a way that, in yours, to your client's benefit. Your Honor, the manual is not a shield to allow the government to get out of its promises that it makes to criminal defendants who waive their constitutional rights and plead guilty. It is an internal rule of how the office would like its various U.S. attorneys to proceed. If those U.S. attorneys don't proceed that way, that is not a protection from full performance of an agreement the government enters into. And the other, you know, leaving even aside that issue, though, Judge, the actual agreement itself indicates that it is a global agreement and it shows different language for the immunity clause for Epstein and the one for the co-conspirators. The agreement itself says that it is signed on the authority of the U.S. attorney for the Southern District of Florida. He's certainly a high-level U.S. attorney that has actual authority to bind the other districts. And, in fact, their own report, the Office of Professional Responsibility report, begins by saying that U.S. attorney Acosta had plenary authority to enter into this agreement. But there's more. The actual Justice Department report, and this is their own report, about a matter that they are investigating at the very same time their Southern District of New York prosecutors are breaching the agreement. So they are, one of the things they're looking into is, was there any corruption in this plea agreement of so long ago? That's what they're doing while the Southern District prosecutors are prosecuting Epstein, are prosecuting Ms. Maxwell. And just before the superseding indictment in this case, they finally came out with their report. But that document shows that there were upper levels, and this is all we have. We don't have any discovery because the judge did not order a hearing. And one other important thing, the defense attorneys for Mr. Epstein were never interviewed for that report. So all we have is a report of the Justice Department interviewing their own and whatever documents they chose to reveal in the report. And even with that limited peak, we see upper levels of the Justice Department- that the NPA was meant to bind every U.S. attorney in the country, every United States attorney's office in the country? I think there's a lot of- so the five AUSAs that were actually the subject of the investigation have no recollection. But the actual iterations of the draft plea agreements made the rounds to the chief CEOs. I very much appreciate that answer, but that's not quite the answer to my question. Well, they don't remember. Is there anything in the OPR report that you're relying on, and I appreciate why, that says that the party's intended for this non-prosecution agreement to apply to the United States as a whole, and to all United States attorney's offices, including the Southern District of New York? I think the fact that the U.S. attorney added the language that it was a global agreement at the same time that he signed off on the co-conspirator clause is evidence that there was an intent to bind other districts. That's Mr. Acosta. Is there anything in the OPR report? No, Your Honor, but I don't think that's necessary. And I think that the idea that someone from the upper echelons of the Justice Department had to sign off on this is just not the law. It might be the way, and in fact, there was affirmative acknowledgement that Mr. Acosta had the right to do this agreement. And also, if there had to be that affirmative statement in order for a criminal defendant to rely on a reasonable understanding of the actual words in an agreement, that would flip the rule on its head. I didn't mean to suggest by my question. It was just an innocent question, believe it or not, to make that suggestion. But okay, well, we've kept you past your time. We have reserved some time for rebuttal. Thank you, Your Honor. We'll therefore hear from the government. Mr. Lohrbeck. Thank you, Your Honor, and may it please the court. I'd like to begin where we left off with my friend on the other side about how to read the non-prosecution agreement. The non-prosecution agreement begins after its recitals by saying that it is on the authority of Alex Acosta, the U.S. Attorney for the Southern District of Florida. The central promise in the non-prosecution agreement is a promise by the Southern District of Florida not to prosecute Epstein in that district. The non-prosecution agreement concludes with the signature of an assistant U.S. attorney from the Southern District of Florida, again, on the authority and on behalf of the U.S. Attorney for the Southern District of Florida, Alex Acosta. This is a document entered into by the U.S. Attorney's Office for the Southern District of Florida intended to bind the Southern District of Florida and that district alone. The main affirmative appearance that the defense points to to suggest that this agreement was intended to speak more broadly to be a national immunity for co-conspirators is the co-conspirator provision and the fact that that provision uses the words United States. That's not the only reference to the United States in this agreement, but it's one of the places that the agreement uses the phrase United States. But as this court held in Brown and as this court held in Gonzales, the phrase United States in a plea agreement like this is just a generic reference to the U.S. Attorney's Office that enters into the agreement and is not on its own enough to establish an affirmative appearance. Are you aware of a non-prosecution agreement in, well, I might as well ask it, in the country that purports and that intentionally is designed to bind the entire United States government? I've discussed this with my co-counsel on this case. None of us have ever entered into such an agreement. I've heard that such an agreement might be entered into in certain kinds of cases, Your Honor, but I've never seen one or entered into one myself. It might be an antitrust division case. But you're not aware? No, that's correct, Your Honor. The other phrase in the agreement that the defense relies on to suggest that there's an affirmative appearance is the recital that the non-prosecution agreement was intended to be a global agreement, but that recital says it is Epstein was hoping to resolve his federal and state liability globally. So it is, again, a limitation to Epstein, and it is about his federal and state liability, which is precisely what this non-prosecution agreement does. It says nothing about the national scope of the non-prosecution agreement. Turning then to the, just to say a few words about the Office of Professional Responsibility report, there is evidence in the Office of Professional Responsibility report about the intent of the co-conspirator provision, specifically footnote 237, which the defense cites in their reply brief, suggests that the two AUSAs, the line AUSA and her immediate supervisor who entered into this agreement, did not expect the co-conspirator provision to bind, or did not expect the non-prosecution agreement to bind other districts. So there is some specific evidence on this point, but in general, the OPR report provides no evidence and no support for a suggestion that there is any affirmative intent to bind the Southern District of New York or any other district in the nation. Can I ask a question? At the time that this agreement was made with the Southern District of Florida, is there anything in the record that suggests that there was an ongoing investigation about related actors, which involved either Ms. Maxwell or Mr. Epstein? In other words, in Florida, in the office of Mr. Acosta, were they aware of any other proceedings before another U.S. Attorney's Office? My understanding is they were not aware of a proceeding in any other U.S. Attorney's Office, just the state proceedings that were parallel to their matter. Unless the court has any other questions, I'd be happy to address any of the other issues. Otherwise, we ask that the court affirm the judgment below. Judge Kabanos, any other questions? Your Honor, I would just like to say that the OPR makes very clear that the prosecutors that were questioned had no recollection of what they were thinking when they agreed and actually edited this co-conspirator clause. One thing they did say, though, was that Mr. Epstein's counsel informed them that he wanted this co-conspirator clause so that no one else would take the blame for what he did. And they also said they had no interest in anyone else, no interest in prosecuting anyone else. The other point I would make is that everyone who was interviewed says, this is a weird agreement, weird, unusual, very unusual. So the idea that this isn't done often is actually more reason to accord it the fair reading of its unique words and terms and distinctions. The last thing I'd like to mention, Your Honors, is even applying ANABI by its terms, ANABI does make the point that in a situation aside from when you're dealing with a preclusive effect, that is, aside from double jeopardy, if the new charges are not sufficiently distinct, the Abamante-Alessi rule should not apply. That is the ANABI rule. This case, Count 6, is a count that is covered by that plea agreement in time, in charge, and by the particular person who was interviewed in the Florida investigation. By ANABI's terms, that charge should be precluded by the non-prosecution agreement and should be dismissed. Denying the viability of this plea agreement strikes a dagger in the heart of the trust between the government and its citizens regarding plea agreements. Thank you. Thank you so much.